UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE MIRANDA SKIDGEL,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No.  2:23-cv-02179-DC-EFB<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits under the Title II of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 11 & 15. For the reasons provided below, it is recommended that plaintiff's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.

**I.     Background**

On June 28, 2019, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), alleging disability beginning May 27, 2018.[1]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 42 U.S.C. §§ 423(d)(1)(A),

1

1  Administrative Record (AR) 107.  Plaintiff alleged she was disabled due to issues with her neck,
2  mid-back, lower lumbar, spine, both shoulders, and clavicle; fibromyalgia; anxiety; bipolar
3  disorder; stomach issues; spastic colon; ulcers; neuropathy in hands and feet; and migraines.  AR
4  71-72.  Plaintiff's application was denied initially and upon reconsideration.  AR 107.  On March
5  3, 2021, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled.  AR
6  116.  After plaintiff appealed, the Appeals Council remanded her case to the ALJ for further
7  consideration of orthopedic impairments.  AR 122, 124-125.  After a telephonic hearing before
8  the same ALJ on July 19, 2022, at which plaintiff was represented by counsel (AR 37-70), the
9  ALJ issued a second unfavorable decision on October 3, 2022.  AR 17-29.

At the July 2022 hearing, plaintiff testified that she last worked as the manager of a
jewelry store, but stopped working in 2018 when her back pain worsened after spinal surgery and
she began having severe migraines.  AR 46-50, 65.  While working, she sometimes missed work
due to migraines and neck pain.  AR 49-50.  She testified that she took migraine medication every

---

416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

2

other day and also underwent injections for back pain and migraines, which "got out of hand" and were triggered by light. AR 49-50. She testified that her symptoms had worsened since 2018, and she had recently purchased a cane, though it was not prescribed by a doctor. AR 52. Plaintiff testified that she suffered from depression, anxiety, and bipolar disorder, but did not take medication for them "because I'm already on too many medications." AR 54. She testified that she felt pain throughout her body "all the time," including while standing, and that she was only comfortable while reclining in a certain position. AR 53, 55-56. Plaintiff estimated that she could sit in a chair for 5 to 10 minutes, after which she would start shaking. AR 56. She testified that she was unable to do household chores, and it was difficult to wash her hair, but she could take care of personal hygiene and dressing. AR 51.

Vocational expert (VE) Susan Creighton-Clavel testified that a person with plaintiff's determined residual functional capacity (RFC) could perform past work as a loan specialist. AR 66-67. The VE further testified that, if such a person was off-task 20 percent of the time, there would be no jobs available. AR 68-69. The ALJ determined that plaintiff had not been under a disability during the period at issue (May 27, 2018 through October 3, 2022), finding as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since May 27, 2018, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease with chronic pain, migraines, obesity, and adjustment disorder with anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except lift or carry occasionally 20 pounds, frequently 10 pounds; stand or walk for 6 hours of an 8 hour workday; and no limitations in sitting. . . . She is capable of constant complex or detailed tasks, and no employments with job duties that require high production goals, such as those paid by the piece.

6. The claimant is capable of performing past relevant work as a loan specialist and retail manager. This work does not require the performance of work-related activities precluded by the claimant's

residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 27, 2018 through the date of this decision.

AR 19-29.

## II. Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. Claims

Plaintiff claims that the ALJ made the following errors: (1) the ALJ improperly discounted plaintiff's testimony of subjective symptoms and pain; and (2) the RFC is not supported by substantial evidence because it does not include any limitation for migraines, which the ALJ found to be a severe impairment.

////

////

4

### IV. **Analysis**

**A. Subjective Symptoms**

Plaintiff claims that the ALJ erred by "massively discredit[ing]" her testimony regarding pain without providing legally sufficient reasons. ECF No. 11-1 at 4. Plaintiff asserts that the ALJ's summary of the medical evidence and brief discussions of conservative treatment and activities of daily living (ADLs), are inadequate to support a negative credibility determination.

Summarizing plaintiff's testimony, the ALJ wrote in part: "She testifies that she suffers from migraines, stating that she typically gets about 20 migraines per month. She testified that she takes medication for her migraines as well as neck and back pain." AR 23. The ALJ also noted plaintiff's testimony that she could only lift 20 pounds, stand for two hours, sit for one hour, and had difficulty using her hands. AR 23.

The ALJ concluded that these statements were "not entirely consistent with the medical evidence and other evidence in the record. The record fails to document objective clinical findings establishing that the claimant was not able to perform work[,] considering the reports of the treating and examining practitioners and the findings made on examination." AR 24.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020). When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing *Lambert*, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" *Lambert*, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Id.* at 1277–78.

Here, the ALJ set out a chronological summary of plaintiff's medical history, beginning with her May 2018 evaluation for chronic neck and low back pain. AR 24. "After failed conservative treatment," the ALJ noted, plaintiff underwent spinal surgery, followed by a course of physical therapy. AR 24. The ALJ went on to document objective evidence of impairment, including a 2019 MRI showing mild dextroscoliosis and a January 2020 evaluation showing limited range of motion in the spine and slight pain in both shoulders. AR 24.

The ALJ concluded that, while plaintiff was referred for pain management and "subsequent treatment notes contain various diagnoses of chronic pain syndrome, . . . *clinical findings are inconsistent with a debilitating condition*." AR 24 (emphasis added) (citing 2020 MRIs of lumbar spine and brain and 2020 nerve conduction study). The ALJ added that "[a]lthough she reported worsening pain in both shoulders and neck, examination findings were

6

essentially within normal limits in August 2020." AR 24. The ALJ further noted that, after a spinal cord stimulator was implanted in 2021, plaintiff reported that her pain had decreased by 50%, and that "objective findings in June 2022 were completely normal." AR 25.

After summarizing the objective evidence, the ALJ opined that plaintiff's subjective

> allegations are greater than expected considering the objective evidence of record. The medical evidence indicates the claimant received routine conservative treatment for complaints of degenerative disc disease, migraines [and mental symptoms]. Treating records noted that her treatment was limited to conservative methodologies (such as back exercises, physical therapy, injections, medication, and spinal cord stimulator). The claimant has reported improvement in her pain, all suggesting milder symptoms than alleged. The claimant's relatively intact daily activities are inconsistent with functional limitations to the degree alleged. The claimant reported going to the movies, going to the park, going to concerts and family get togethers.

AR 25 (record citations omitted).

The Ninth Circuit has observed that a claimant's testimony about pain "is inherently subjective and difficult to measure. For these reasons, . . . the ALJ's credibility assessment regarding a claimant's pain testimony is especially important." *Coleman v. Saul*, 979 F.3d 751, 755-56 (9th Cir. 2020). "An ALJ . . . may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." *Id.* at 756, citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, a key question is whether substantial evidence supports the ALJ's conclusion that plaintiff's pain was well-controlled by medication. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"). In his review of the medical evidence, the ALJ wrote that, in July 2022, plaintiff "reported feeling okay and noted some decrease in her migraine headaches." AR 25, citing AR 1384-85, 1387. In the underlying medical notes, the examining neurologist stated:

> Patient states since the last time she was seen she has been feeling okay.
>
> She reports her head feeling on fire and her headaches have been a lot more constant.

7

> In the past month she has had 3-4 good days with no headache.
>
> The Emgality injection did not work for her and patient reports after taking the Emgality her headache got worse.
>
> Imitrex helped her ease the pain a bit more, the Nurtec helped as well but was not doing as much with the migraine. She reports sonophobia and photophobia.

AR 1384; *see also* AR 1387 (noting that Nurtec "did not help with the headache … Overall it will be difficult to treat her headache because she is already on multiple medications for pain[.]"). Thus, taken in context, plaintiff's comment that she was "feeling okay" in July 2022 does not indicate that medication was controlling her migraine pain.

Also in the credibility analysis, the ALJ noted that plaintiff "has reported improvement in her pain, all suggesting milder symptoms than alleged." AR 25, citing AR 906-947, 1222-1291, 1374-1388 (treatment records from 2020-2022). However, from cited treatment records spanning the summer of 2020, it is far from evident that plaintiff's migraines significantly improved on medication. *See, e.g.,* AR 908 (September 2020 note that plaintiff reported "migraines everyday" that lasted 1-2 days). The ALJ also cites assorted treatment records from October 2020 through April 2022, in which some checkbox forms from a pain management clinic indicate that medication was "providing relief." *See, e.g.*, AR 1222, 1226, 1255, 1267. A November 2021 checkbox form appears to indicate, as the ALJ noted, that plaintiff's pain was down by 50 percent after use of a spine cord stimulator. AR 1238. However, the ALJ points to little evidence that plaintiff exaggerated the severity and frequency of her migraines, and the record shows that she consistently reported migraine pain.

Continuing his credibility analysis, the ALJ reasoned that plaintiff received "routine conservative treatment," including injections and medication. AT 25. However, as discussed above, the record suggests that these treatments did not effectively control her migraines, which she testified was one of the main reasons she stopped working in 2018. The ALJ further stated that plaintiff's daily activities—such as "going to movies, going to the park, going to concerts and family get-togethers"—were inconsistent with her alleged severe pain. AT 25. However, the fact that plaintiff sometimes felt well enough to socialize is not inconsistent with frequent severe

migraines and fails to undermine her testimony on that point.

The court concludes that the ALJ erred in the credibility determination by concluding, with insufficient cited evidence, that plaintiff exaggerated her frequent severe migraines. This was harmful error, as it led to the conclusion that plaintiff could perform paid work and not be off-task twenty percent of the time.[2] Accordingly, summary judgment should be granted for plaintiff.

### V.      Remedy

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole leaves doubt as to whether, absent the error, plaintiff would be found disabled during the relevant period. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony.

---

[2] The court does not reach plaintiff's second claim.

The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Accordingly, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## VI.     Recommendation

For the foregoing reasons, it is hereby recommended that plaintiff's motion for summary judgment (ECF No. 11) be granted; defendant's cross-motion for summary judgment (ECF No. 15) be denied, and this case remanded for further proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 6, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE